**WO**

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 09-8067-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| Anderson Brown, | |
| Defendant. | |

Pending before this Court are (1) Defendant Anderson Brown's Motions To Vacate Trial and Order Specific Performance of the Plea Agreement (Doc. 48), (2) Defendant's Motion To Sever Newly Charged Counts Due to Prejudicial Joinder (Doc. 50), and (3) Defendant's Motion to Dismiss Superseding Indictment for Vindictive Prosecution (Doc. 53). For the reasons stated below, each of Defendant's motions is denied.

**I.    Background**

Anderson Brown entered a plea agreement with the United States. Pursuant to the Agreement, Defendant Brown pleaded guilty to sexual abuse of a minor in violation of 18 U.S.C. §§ 1153, 2243(a) and 2246(2)(A). The government stipulated with Brown, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(c), that "the defendant shall be sentenced to no less than the low end and no greater than the mid-range of the applicable guideline range as determined by the court at sentencing and that sentencing guidelines 2A3.1 (cross reference to Criminal Sexual Abuse) and 2A3.4 (c)(1) (cross reference to Aggravated Sexual

Abuse) shall not apply in this case." The Agreement also specified, "If Defendant's guilty plea is rejected, withdrawn, vacated, or reversed at any time, the United States will be free to prosecute the defendant for all charges of which it has knowledge. . . . In such event, defendant waives any objections, motions, or defenses based upon the . . . constitutional restrictions in bringing of the later charges or proceedings." (Doc. 36 at ¶ 6).

Prior to sentencing, the probation officer prepared a Pre-Sentence Investigation Report ("PSIR"). The PSIR, although aware that the Plea Agreement stipulated that the cross-reference to United States Sentencing Guidelines § 2A3.1 would not apply, nevertheless recommended its application. The report further discussed other alleged instances of abuse and victims molested by Plaintiff that had some connection to the instant case. For example, the PSIR stated that on March 21, 1998 Navajo Tribal Police were contacted by A.J., then 20, after two of her relatives, one of them the victim in the instant offense, reported to her that they had been sexually molested by the Defendant. A.J. reported to the police that she too had been molested by the Defendant and had two children by him. When interviewed by Navajo Police, the victim in the instant offense--the Defendants step-daughter--stated, among other things, that when the Defendant attempted to place his penis inside her she would "fight him off" and he would get mad and hit her with his hands. The other purported victim with whom police had contact in March 1998 was Defendant's biological daughter, who also reported to Tribal police that Defendant had sexually molested her.

After a four month period in which the alleged victims were removed from the Defendant's home in 1998, no further action was taken by the Tribal Police, and the victim was returned to the Defendant's home.

Five years later, the FBI began investigating the Defendant after it ascertained that the victim gave birth in 1999 to a child that was fathered by the Defendant. The FBI again also interviewed A.J. and the Defendant's biological daughter, who allegedly had been previous alleged victims. A.J. confirmed that the Defendant, her father, had fathered three children with her. She also stated to the FBI that the Defendant had threatened to kill the victim's mother if the victim ever told anyone about the abuse. A.J. was subsequently killed in an

automobile accident on November 2, 2008. Defendant's daughter again confirmed that Defendant had abused her and stated that she "was intimidated by her father because he sometimes hit her on the head with a stick, and he told her not to tell anyone about the incidents."

The government filed an objection to the PSIR in which, consistent with the plea agreement, it objected to the report's recommendation that the cross-reference be applied. The Defendant subsequently filed a Response, joining in the government's objection.

On April 9, 2010, at the sentencing hearing in this matter, the Court acknowledged the government's objection to ¶ 14 of the report that recommended application of the cross-reference despite the stipulation in the plea agreement that the cross-reference would not apply. The Court stated that it would deal with that objection later and further ascertained that neither party had any other objections to the contents of the PSIR. The Court then inquired into four other specific matters. First, the Court inquired about the age of the victim at the time of the perpetration of the offense as suggested by ¶ 5. Both parties acknowledged that the victim would have been twelve, or possibly a young thirteen year-old at the time she was impregnated by the Defendant. Second the Court ascertained that Defendant currently has six minor children in his home: four boys aged 17, 15, 14, and 13, and two girls aged 11 and 3. Third, both parties acknowledged the accuracy of ¶ 43 of the report, which indicated that Defendant's wife was aware and did not disapprove of his sexual molestation of the victim of the present offense. And, fourth, that although the plea agreement anticipated a maximum supervised release range of up to life, in fact the maximum supervised release possible for the charge, given the date the offense was committed, was three years as was stated in ¶ 70 of the plea agreement.

The Court then stated that it had "real concerns with this plea agreement." Principal among them was the "protection of the young children who are currently in the home of" the Defendant in light of the maximum three year term of supervised release, and a maximum remaining period of incarceration of approximately 10 months, which would put Mr. Brown back in the home without any supervision in less than four years with young daughters then

aged approximately 7 and 15 and a wife who, as stated, had no objection to Mr. Brown's incestuous relationship with the victim in this case.

The Court also evaluated the strength of the state's evidence in the underlying charge, including positive DNA testing, and the evidence that might be relevant to whether the cross-reference should apply. The Court asked government's counsel whether she had inquired of the victim as to whether any violence or threat of violence had been used against her in the perpetration of the offense. Government counsel indicated that she had not personally done so. Under the circumstances the Court expressed the view that, considered from the standpoint of the protection of the public, the government had excessively limited, through its Rule 11(c)(1)(C) sentencing stipulations, the Court's ability to sentence for the crime, especially in light of the strong evidence of guilt on the underlying charge and the possibility that the government could meet the burden of proof as to the cross-reference.

The government's attorney acknowledged that it had miscalculated the possible range of supervised release when it entered the plea agreement, but continued to urge acceptance of the plea agreement, and continued to express the view that it would not be able to meet the burden of proof on the applicability of the cross-reference at sentencing. After the Court laid out all of its concerns relating to the Plea Agreement, the prosecutor responded by stating the following:

> I share the Court's concern about protection of the community. I'll tell you that when I made this plea agreement I made a mistake, in that I calculated the sentencing guidelines at what they are today and not what they were 10 years ago, which is why you see in the plea agreement that I had lifetime supervised release as a possibility and not a maximum of three years.
>
> That was my mistake. Because when I was making the plea offer, in my mind I thought that he was going to have a higher resulting sentence than what I actually saw in the pre-sentence report when it came to me. Having said that, these are the stipulations that I made.
>
> I do believe that it would be difficult from me—obviously, its up to the Court–as to whether or not there's clear and convincing evidence that that aggravator would apply. But since this course of conduct occurred over a long period of time, and because I've charged one incident that resulted – a specific incident that resulted in the birth of a child, my concern is that I'm not going to be able to prove that—that there was force or threats that were used on that particular occasion, and I don't believe that the Court could imply the—apply the enhancement for things that he did on other occasions

- 4 -

that he has not admitted to and he has not pled guilty to. So that's my concern about the enhancement.

In terms of the evidence in the case for sexual abuse of a minor, I do agree with the Court that the evidence is strong. We do have DNA testing that shows that defendant is the biological father of this child. I do have a victim that is cooperative and willing to testify. So if the Court rejects the plea and the case moves forward to trial, I believe that—that we will prevail, that the government will prevail.

I still think I'm going to have difficulty, however, with the enhancement, the aggravator, for purposes of sentencing.

Tr. at 11–12.

The Defense counsel then argued why the plea agreement should be accepted. She raised no objection as to the statements made by the prosecutor. When the Court asked if there was anyone who wished to be heard on behalf of either the victim or the Defendant as to the plea agreement, three family members spoke on behalf of the victim, and Defendant's wife spoke on his behalf.

The first of the three who spoke on behalf of the victim, also referred to himself as a victim and to the other alleged family member victims of the Defendant that were disclosed in the PSIR. The biological daughter of the defendant who was referenced as an alleged victim in the PSIR also spoke on her own behalf and referred to her own status as a victim of the Defendant's assaults. Finally, the daughter of the Defendant and A.J., (again the same A.J. that was referenced in the PSIR), also spoke on behalf of the victim and her deceased mother A.J. The Defendant objected neither to the comments of the family members, their reference to themselves as victims, nor the description concerning them in the PSIR.

Defendant's wife then spoke on the Defendant's behalf without objection from the government.

The Court then rejected the plea agreement, and Defendant withdrew from his guilty plea. Approximately two weeks later, the government filed a superseding indictment which added two additional counts for sexual contact against a separate victim—the biological daughter that was alleged to be an additional victim in the PSIR. Doc. 45.

**II.  Analysis**

### A. Motion To Vacate Trial and Order Specific Performance of the Plea Agreement

*United States v. Camarillo-Tello,* 236 F.3d 1024 (9th Cir. 2001), on which the Defendant relies to argue that the plea agreement should be specifically enforced, is distinguishable. In *Camarillo-Tello* the United States entered a Plea Agreement with the Defendant in an illegal re-entry case. In the agreement, the government agreed to recommend a four-point downward adjustment in exchange for the defendant's stipulation to his removal, his participation in the fast-track program, and his waiver of appeal. Prior to sentencing, the government filed a sentencing memorandum in which it recommended a four-level downward adjustment based only on the defendant's "stipulating to removal pursuant to U.S.S.G. 5K2.0." The PSIR recommended only a two-level downward departure for the stipulated removal. At sentencing, after speaking with the Defense, and before the government had the opportunity to speak, the Court indicated that it would follow the recommendation of probation. When the Court asked the government to speak, the government indicated that "the recommendation of Probation is appropriate."

On appeal, the Ninth Circuit found that the government had breached its plea agreement in two ways: first, by failing in its sentencing memorandum to set forth all of the reasons that were contained in the plea agreement justifying the four level downward departure; and second, and most significantly, by failing at sentencing to recommend the four level downward adjustment as required by the plea agreement. The Ninth Circuit noted that while the sentencing Court is not required to follow the joint recommendation of both parties, "the chance that the court will follow the joint recommendation is often the basis upon which defendants waive their constitutional right to trial." *Id.* at 1028. The Defendant was thus entitled to receive that "united front," even if the Court had already made up its mind. The Circuit thus remanded, as the law required, to a different district court for sentencing.

Defendant asserts that the facts in this case are similar, and require the same result. There are, to be sure, some similarities between this case and *Camarillo-Tello*. As in *Camarillo-Tello,* the Court had substantially made up its mind prior to hearing from any

1 party that it would not accept the plea agreement. And, similarly to *Camarillo-Tello,* the
2 government had, prior to trial, filed an objection to the recommendation of the PSIR that the
3 Court reject the terms of the Plea agreement. Doc. 39.

4 Other facts, however, do not align with *Camarillo-Tello.* First, unlike *Camarillo-
5 Tello,* the Defendant puts forth no argument that the government's objection to the PSIR was
6 inadequate, or failed to state an underlying basis which the government had acknowledged
7 in the plea agreement. The Defendant himself joined in the government's objection in his
8 response to that objection. *See* Doc. 40.

9 Second, unlike *Camarillo-Tello,* the government continued to assert throughout the
10 hearing that it did not believe it had the ability to establish the facts on which a cross-
11 reference to United States Sentencing Guidelines § 2A3.1 would be appropriate and thus, by
12 inference, the plea agreement should be accepted. *See, e.g., United States v. Johnson,* 187
13 F.3d 1129, 1135 (9th Cir. 1999) (noting that a prosecutor's argument to the court in favor of
14 the plea agreement could be inferred by the negative implication of the prosecutor's
15 statement). The government continues to so urge. Moreover, unlike *Camarillo-Tello,* in this
16 case, the government had stipulated pursuant to Rule 11(c)(1)(C) that the cross-reference to
17 2A3.1 (cross reference to Criminal Sexual Abuse) would not apply at sentencing. Thus, the
18 Court in rejecting the plea agreement did not have the option of merely ignoring the
19 government's recommendation, but was required to reject the entire plea agreement and
20 provide the Defendant with the opportunity to withdraw from his plea, which the Defendant
21 did.

22 Third, when the Court noted that the Plea Agreement erroneously stated that the
23 maximum sentence of supervised release could be for life, the prosecutor acknowledged that
24 this resulted from her mistake. She did not, however, suggest that her mistake was a reason
25 that the Court should not implement the plea agreement. Rather, she acknowledged that
26 "these are the stipulations that I made," and she did not seek or urge the Court to provide the
27 government with any sort of release based on her miscalculation.

28 The Court acknowledges that the government's mistake about what the appropriate

range of sentence is given the date of the crime involved, without more, provides no basis for rescinding a plea agreement. *See United States v. Transfiguracion,* 442 F.3d 1222, 1229 (9th Cir. 2006). But, the United States never requested such relief. Nevertheless, in examining whether a plea agreement is "in the best interest of the public," the Court is entitled to consider and reject sentence bargains "when the court believes a sentence is too lenient or otherwise not in the public interest." *Morgan v. U.S. Dist. Court for the Dist. of Ariz.,* 506 F.3d 705, 711 (9th Cir. 2007). In this case, the court specified why, in the circumstances of this case, it believes the plea agreement and the sentence bargain it contains are too lenient and thus why it rejected the plea agreement. It did not reject the plea agreement merely because the government made a mistake in calculating the appropriate sentence, but rather did so in its perception of the public interest.

To the extent that the Defendant asserts that the government did not present a "united front" because the Prosecution began its presentation about the difficulty of establishing the sentence enhancement with the phrase "I share the Court's concern about protection of the community," the Court finds the argument unpersuasive. To amount to a breach of the plea agreement a statement to the court must amount to an "'attempt by the government to influence the district court' to impose a harsher sentence than the one that the government agreed in the plea agreement to recommend." *United States v. Quach,* 302 F.3d 1096, 1101 (9th Cir. 2002) (quoting *United States v. Mondragon,* 228 F.3d 978, 980–81 (9th Cir. 2000)). Understood in context, the prosecutor's statement in this case is an acknowledgment by the prosecutor of the concerns just expressed by the Court, followed by an explanation of why, from the prosecutor's perspective, the plea agreement as entered into is reasonable and should be accepted. That is how the Court understood the statement then, and it is how the Court still understands that statement. The statement did not amount to an attempt by the prosecutor to have the Court reject the plea agreement, or impose a harsher sentence than the one stipulated to by the government. Therefore, the statement does not amount to a breach of the plea agreement.

The Defendant also asserts, pursuant to *Johnson,* 187 F.3d at 1129, that the

government breached the plea agreement when it presented other victims to address the Court. In *Johnson,* after entering a plea agreement to recommend the low-end of the guideline range, the prosecutor introduced a statement from a victim of a domestic violence offense convicted by the defendant years earlier, and which had nothing to do with the offense for which the defendant was being charged. The Court noted "[w]e see no way to view the introduction of [the previous victim's] statement other than as an attempt by the prosecutor to influence the court to give a higher sentence than the prosecutor's recommendation." *Id.* at 1135. It thus held that the prosecutor had breached the plea agreement.

In this case, however, it was not the prosecutor who suggested that any of the family members speak. Rather, those family members who did speak, both on behalf of and opposed to the plea agreement, did so at the Court's invitation. The prosecutor cannot be said to have failed to present a "united front" due to the Court's determination to allow family members to address their view of the plea agreement. Further, while the prosecutor is obliged to comply with the terms of the Plea Agreement, she is not obliged to do so enthusiastically. Nor is the prosecutor required to distance herself from statements made by others at the request of the Court and not at the prosecutor's own initiation.

The Defendant does not suggest that the Court does not have the discretion to make such an invitation to the present family members who had traveled from the reservation to be present at the hearing. In light of the fact that a prosecutor must put forth a united front with the defense attorney when a plea agreement is at issue, the Court must have some discretion to explore the suitability of a plea agreement. And to the extent that the Defendant would suggest that it was error for the family members to refer to their own status, or the status of others as alleged victims of the Defendant, the Defendant made no objection at hearing. Further, such error is harmless, as the knowledge of the alleged previous victims had already been submitted to the Court in the PSIR without any objection. While the harmless error doctrine may not apply in cases where the plea agreement was breached by the prosecutor, *Id.* at 1385, the court finds that there was no such breach in this case.

1   Therefore, Defendant Anderson Brown's Motions To Vacate Trial and Order Specific
2   Performance of the Plea Agreement, Doc. 48, is denied.

### B. Motion to Dismiss Superseding Indictment

Defendant explicitly waived any constitutional objections to the bringing of additional charges listed in the superseding indictment. Defendant agreed in the original plea agreement to the following:

> If defendant's guilty plea is rejected, withdrawn, vacated, or reversed at any time, the United States will be free to prosecute the defendant for all charges of which it has knowledge, and any charges that have been dismissed because of this plea agreement will be automatically reinstated. In such event, defendant waives any objections, motions, or defenses based upon the Statute of Limitations, the Speedy Trial Act or constitutional restrictions in bringing of the later charges or proceedings.

Courts enforce the "literal terms" of plea agreements. *Transfiguracion*, 442 F.3d at 1232. According to the plain terms of the agreement, Defendant withdrew his guilty plea, meaning that the United States was free to prosecute him for any charges of which it had knowledge and that Defendant waived any objection to the United States bringing such charges. The Defendant does not argue that the United States did not have knowledge of the charges.

This case is somewhat analogous to *United States v. Salemo*, which involved an identical waiver clause. 81 F.3d 1453, 1462 (9th Cir. 1996). The defendant in *Salemo* pled guilty to five of seventeen counts listed in the indictment. *Id.* The defendant's plea was later vacated, at which point the government sought and obtained a conviction on all seventeen counts. *Id.* The Ninth Circuit held that, when the plea agreement was vacated, the defendant and the government were restored to the same position they had been prior to defendant's plea. *Id.* The court enforced the plain meaning of the agreement and held that all charges reinstated automatically and that the government thus was free to prosecute the defendant on all seventeen counts, not merely on the five counts to which the defendant originally pled guilty. *Id.*; *see also Brown v. United States*, 637 F. Supp. 2d 212, 217 (S.D. N.Y. 2009) (holding that defendant's claim of vindictive prosecutorial misconduct was barred by his plea agreement to waive collateral attack of below-guideline sentence). Similarly, the Court enforces the plain language of the agreement in the present case. Because the Defendant

1 withdrew from his plea, the government became free to prosecute the Defendant for all
2 charges of which it had knowledge.

### C. Motion To Sever

Defendant moves to sever Count 1 for Sexual Abuse of a Minor from two other counts of Abusive Sexual Contact. At this point all three counts appear to involve similar facts, a close temporal proximity, and an overlap of evidence. The parties thus do not dispute that joinder normally would be permitted because the offenses are of the "same or similar character." Fed. R. Crim. P. 8(a). Defendant contends, however, that severance under Rule 14 is proper. Fed. R. Crim. P. 14. Rule 14(a) states, "If the joinder of offenses . . . in an indictment, an information, or a consolidation for trial appears to prejudice a defendant . . . , the court may order separate trials of counts . . . or provide any other relief that justice requires. *Id.*

The Ninth Circuit has repeatedly held that joinder is not prejudicial if the evidence relating to all counts would have been admissible in each case even if the counts had been severed. *See, e.g.*, *United States v. Mitchell*, 502 F.3d 931, 964 (9th Cir. 2007) (holding that joinder of robbery and car-jacking counts was not manifestly prejudicial because they were related and evidence on the robbery charges would have been largely admissible in a separate trial on the carjacking counts); *United States v. Evans*, 796 F.2d 264, 265 (9th Cir. 1986) (holding that severance of several counts of embezzlement was unnecessary because the evidence relating to each count would have been admissible in separate trials to show intent or lack of mistake and explaining that "[w]hen the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate"); *United States v. Irvine*, 756 F.2d 708, 712 (9th Cir. 1985) (affirming the denial of severance of bribery and narcotics offenses where the drug evidence would have been admissible in a bribery trial to show intent and ability).

In this case, joinder would not be prejudicial because the evidence relating to each count likely would be admissible in each trial even if the counts were severed. Because the counts are sex-related crimes, the Federal Rules of Evidence permit the admission of other

similar acts for any relevant purpose. *See* Fed. R. Evid. 413(a) ("In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant."); 414(a) ("In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible, and may be considered for its bearing on any matter to which it is relevant."). In a very similar case, the Eighth Circuit held that severance was not prejudicial because the evidence relating to other sexual acts would have been admissible even in separate trials. *United States v. Running Horse*, 175 F.3d 635, 637 (8th Cir. 1999). In *Running Horse*, the defendant was charged with ten counts of sexual abuse against the same victim, as well as one count against a different victim. *Id.* Defendant sought to sever the count against the different victim. *Id.* Affirming the district court's denial of severance, the Eighth Circuit explained that the defendant was not prejudiced because Federal Rule of Evidence 413 would have allowed evidence of the other ten counts of sexual abuse in a separate trial for the eleventh count. *Id.* Likewise, it is not yet apparent that the Defendant would experience prejudice because the Rules of Evidence would allow the same evidence to be admitted even if the Court severed the counts.

**IT IS THEREFORE ORDERED** that Defendant's Motion To Vacate Trial and Order Specific Performance of the Plea Agreement (Doc. 48) is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant's Motion To Sever Newly Charged Counts Due to Prejudicial Joinder (Doc. 50) is **DENIED** without prejudice.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss Superseding Indictment for Vindictive Prosecution (Doc. 53) is **DENIED**.

DATED this 13th day of July, 2010.

G. Murray Snow
United States District Judge